SO ORDERED: October 11, 2012.

_____
Anthony J. Metz III
United States Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAIN MANAGEMENT CENTER | ) | CASE NO. 08-10555-AJM-11 |
| OF SOUTHERN INDIANA, P.C., | ) | |
| PAIN MANAGEMENT & SURGERY | ) | Case No. 08-10560-AJM-11 |
| CENTER OF SOUTHERN INDIANA, | ) | |
| INC.,  and COMPREHENSIVE | ) | Case No. 08-10557-AJM-11 |
| SPINE CARE, P.C. | ) | |
| | ) | Jointly Administered under |
| Debtors | ) | Case No. 08-10555-AJM-11 |
| | ) | |
| | ) | |
| OFFICIAL UNSECURED CREDITORS' | ) | |
| COMMITTEE and AYRES CARR & | ) | |
| SULLIVAN, P.C. AS TRUSTEE OF | ) | |
| THE UNSECURED CREDITOR TRUST | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| vs. | ) | No. 10-50526 |
| HEARTLAND BANK AND TRUST | ) | |
| COMPANY, KAMAL K.TIWARI, | ) | |
| AND MARISHA, LLC. | ) | |
| | ) | |
| Defendants | ) | |

1

**ORDER DENYING MOTION TO DISMISS COUNT I OF THE AMENDED COMPLAINT**

This matter came before the Court for hearing on August 31, 2012 upon the Motion to Dismiss Count I of the Plaintiffs' Amended Complaint. The Plaintiffs appeared by counsel, Bret S. Clement; Movant and Defendant Heartland Bank appeared by counsel, Jennifer Watt and Harley Means. The Court took ruling on the matter under advisement at the conclusion of the hearing. The Court now DENIES the motion to dismiss for the reasons set forth below.

*Background*

The Plaintiffs filed their Amended Complaint to Set Aside Fraudulent Transfers on March 28, 2012 of which Count I seeks to avoid as a fraudulent transfer the security interest granted to Western Springs National Bank ("Western Springs"), and now held by successor Heartland Bank and Trust Company ("Heartland"). The Amended Complaint alleges that in October, 2006, Western Springs and Pain Management Center of Southern Indiana, P.C., (hereinafter referred to as "Pain Management") one of the Debtors, entered into a business loan agreement wherein Western Springs agreed to make advances to Pain Management for working capital and for Kamal K. Tiwari ("Tiwari"), the sole shareholder of Pain Management, in the amount of $2,000,000 (the "Loan"). In exchange for the Loan, Pain Management granted Western Springs a security interest in its equipment, inventory, accounts and all of its other property. The Amended Complaint alleges that at least $1,500,000 of the loan proceeds were transferred to a bank account in Tiwari's name for which Tiwari used for personal investment or other personal expenditures. Depending on whether Western

Springs disbursed the funds to Pain Management (who in turn disbursed the funds to Tiwari) or whether Western Springs disbursed the funds to Tiwari directly, the Plaintiffs alleged that the taking of a security interest in substantially all of Pain Management's assets was a transfer that is avoidable under §548(a)(1))(B). .

The jointly administered Debtors filed their chapter 11 plan on August 27, 2008. Western Springs filed a proof of secured claim in the amount of $2,014,679.92 on September 24, 2008 to which there was no objection. An unsecured creditors' committee (the "Committee") was formed and the Court approved employment of its counsel.

The Debtors' chapter 11 plan was confirmed on December 21, 2009 (the "Confirmation Order"). The Plan provided that an "Unsecured Creditor Trust" (the "Trust") was to be established for the benefit of the unsecured creditor class 7 and funded by the "Tiwari Contribution" which was defined as the lesser of $250,000 or 60% of the allowed claims of Class 7. The Trust would be managed by the Unsecured Creditor Trustee (the "Trustee")[1]. Tiwari was to execute a promissory note (the "Tiwari Note") evidencing the terms and conditions of his obligations under the Tiwari Contribution. Payments of the Tiwari Note were secured by Tiwari's pledge of stock in the reorganized Debtors. Article 5.1 of the Plan provided in part that the Debtors did not anticipate pursuing any avoidance actions and that the Committee was waiving its right to compel the Debtors to bring such avoidance actions or to bring such actions on

---

[1] The term "Trustee" here refers to the Trustee of the Unsecured Credit Trust created by the Plan and should not be confused with the chapter 7 trustee assigned to this case after its conversion to chapter 7. The Chapter 7 Trustee will be referred to as "the Case Trustee".

its own.  Article 5.2, however, carved out an exception to Article 5.1 in that it provided that the Debtors and the Committee specifically preserved and reserved all rights to bring avoidance actions against Tiwari and Western Springs and that only the Committee could bring such actions in the event Tiwari defaulted on his payments under the Tiwari Note.  As provided for in the Article 5.2 carveout, the Committee filed this adversary proceeding and its initial fraudulent transfer complaint against Western Springs and Tiwari on August 26, 2010.  The Trust was to be governed by the "Liquidating Trust Agreement for the Unsecured Creditor Trust", ("the Trust Agreement"), an unexecuted copy of which was attached to the Plan as Exhibit A.

On December 1, 2010 In the main bankruptcy case, the Debtors moved to sell their assets to Certified Surgeons, Inc. ("CSI") for $140,000.  Western Springs objected on the basis that it had a first priority perfected security interest in the assets and that it therefore had the right to credit bid its interest at sale.  Western Springs submitted its credit bid in the amount of $100,000 and was determined to be the successful bidder at the sale.  On February 28, 2011, the Court approved the sale of the Debtor's assets to Western Springs (the "Sale Order").  Four days later, a previously-filed and pending motion to dismiss or convert filed by the United States Trustee was granted and the case converted to chapter 7.

Less than two months after Western Springs bought the Debtors' assets, it was closed and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. Heartland and the FDIC entered into a purchase agreement on April 8, 2011 whereby Heartland bought certain assets and assumed certain liabilities of Western Springs.

The Plaintiff thereafter amended its complaint and substituted Heartland for Western Springs.

Heartland has moved to dismiss Count I of the Amended Complaint under Fed. R. Bankr. P 7012(b)(1) and (6) because the Plaintiffs lack standing to bring this action and have failed to state a claim. The Plaintiffs here are the Committee and the Trustee. Heartland argues that the Committee no longer had standing because it ceased to exist once the case was converted to chapter 7 and that the Trustee does not have standing because the avoidance action was not assigned to the Trust, and thus, the Trustee cannot administer it. Heartland further argues that the chapter 7 trustee ("Case Trustee") has no standing because he is bound by the acts of the chapter 11 Debtors and those acts included selling the Debtors' assets to Western Springs, its predecessor and that pursuit of this avoidance action would be contrary to the Sale Order. Heartland also argues that the pursuit of this avoidance action is an impermissible collateral attack on the Sale Order and that it is barred by the doctrines of collateral estoppel and res judicata. Heartland acknowledged in the August 31st hearing that disposition of this motions involves interpretation of the Confirmation Order and the Sale Order. The Court notes that it also involves examination of the Plan and the Trust Agreements. .

### *Discussion*

### *Rule 12(b) Motion to Dismiss*

Fed. R. Bankr. P. 7012(b) tracks Fed. R. Civ. P. 12(b). "A Rule 12 (b)(6) motion tests the sufficiency of the complaint ... while a Rule 12(b)(1) motion tests whether the

5

Court has subject matter jurisdiction. *Second Amendment Arms v. City of Chicago*, 2012 WL 4464900 (N. D. Ill. 2012). With respect to motions to dismiss under both Rules 12(b)(1) and (6), (applicable to bankruptcy adversary proceedings via Federal Rule of Bankruptcy Procedure 7012), the Court accepts all well-pled allegations from the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Hardy v. U.S.*, 2012 WL 4358733 (S. D. Ind. 2012); *Posley v. Clarian Health*, 2012 WL 4101914 (S. D. Ind. 2012). A complaint will be dismissed under Rule 12(b)(1) if it lacks the authority to hear and decide the dispute. If subject matter jurisdiction is not evident from the face of the complaint, the motion to dismiss under Rule 12(b)(1) is analyzed as any other motion to dismiss. *Green v. Chase Bank USA, NA*, 2012 WL 3961230 (N. D. Ill. 2012). A complaint may be dismissed under Rule 12(b)(6) if it fails to allege facts sufficient to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, and not to pass upon the merits of the case. *Wright v. Thompson*, 2012 WL 2401532 at *1 (S. D. Ind. 2012).

### *Plaintiffs' Lack of Standing - Rule 12(b)(1) and (b)(6)*

Heartland alleges that the Committee does not have standing to pursue this avoidance action because it ceased to exist when the case converted to chapter 7. Although a creditors' committee may be elected in a chapter 7, nothing in the record suggests that was done here. The Committee here operated only as a committee in the chapter 11 and it was dissolved when the case converted t chapter 7 and no corresponding chapter 7 committee had been appointed. See, *In re Energy Co-op,*

*Inc.*, 95 B.R. 961, 965 (Bankr. N.D. Ill. 1988). Both the Plaintiffs and the Defendant concede the Committee ceased to exist upon conversion to chapter 7. The Court agrees with Heartland and concludes that the Committee does not have standing to pursue this action.

Whether the Trustee has standing is a different matter. Heartland is correct in that the Plan does not give the Trustee authority to bring this avoidance action; it reserved that right only for the Debtor and the Committee, and only the Committee in the event Tiwari defaults on his obligations under the Tiwari Note. Attached to the Plan as Exhibit A was an unexecuted copy of the Trust Agreement which governed the Unsecured Creditor Trust and set forth the responsibilities of the Unsecured Creditor Trustee. The question is whether either the Debtor or the Committee assigned the right to bring this avoidance action to the Unsecured Creditor Trust. To answer that question, one must wind a convoluted path.

Paragraph 2.2 (c) of that unexecuted copy provides that one of the sole and exclusive purpose of the Unsecured Creditor Trust was "to investigate, prosecute, settle, or abandon" the avoidance action against Western Springs. Paragraph 5.2 (b) provides that the Unsecured Creditor Trustee has control and authority over the management and disposition of the Trust Assets, which included the right to"own, retain, prosecute, enforce, compromise, settle, release or otherwise dispose of" this avoidance action. Neither of these sections specifically states that the Debtors assigned the Trustee the avoidance action, but these two sections certainly contemplated as much or they would not have provided that the Trustee had the right to

7

prosecute it. It is curious that a trust agreement would give a trustee such powers with respect to a cause of action without conveying to the trustee the right to bring the cause of action.

Heartland is correct in that nothing in the unexecuted copy of the Trust Agreement or Plan expressly provides that the Debtors assigned or conveyed this avoidance action to the Trustee. Indeed, 2.31 provided that the *Debtors' estate* irrevocably conveyed control of and all rights in the "Trust Assets" as per the Plan. However, the definition of "Trust Assets" in the unexecuted copy was located under the section labeled "Recitals" and was defined as "the amounts to be paid to the Unsecured Creditor Trust...by Kamal K. Tiwari, M.D. either directly or pursuant to a promissory note to be executed by Dr. Tiwari...". In other words, the term "Trust Assets" was defined only as the Tiwari Contributions and was silent as to the avoidance action. However, the affidavit of John R. Carr, III, one of the attorneys for the Committee, recites that the Trust Agreement was amended and executed post confirmation. This fully executed Trust Agreement, while not altering the definition of "Trust Assets" under the"Recitals" section - perhaps as an oversight - did contain a new provision whereby "Trust Assets" located in the new "Article I Definitions" section was defined as ""those funds received by the Unsecured Creditor Trust through the Tiwari Contribution and/or any recovery obtained as a result of the Unsecured Creditor Trustee 's initiation of an avoidance action against any Insider or Bank Parties". Thus, the fully executed Trust Agreement expressly included this avoidance action as part of the "Trust Assets" to be administered by the Trustee. No amendments were made to Paragraphs 2.2(c), 5.2(b)

8

and 2.31 and they remained in the Trust Agreement unchanged. Taking these provisions as a whole, and drawing all reasonable inferences in favor of the Plaintiffs, the Court concludes that the Trustee has standing to bring this action.

### *Collateral Estoppel / Res Judicata*

Heartland next argues that the Plaintiffs have failed to state a claim because this avoidance action against it is an impermissible attack on the Confirmation Order and the Sale Order.

The Confirmation Order incorporates the terms of the Plan and Article III, Section A of the Plan classified Western Springs' claim as Class 3 and provided that "the Allowed Secured Claim" was deemed to be in an amount set forth in Western Springs' proof of claim and that "such determination shall be final and not subject to objection or any attempt to challenge the nature, amount, validity or priority [of] any such Allowed Secured Claim except as provided in Subsection H, below". The Plan contained no such "Subsection H" even thought the Debtors' approved disclosure statement did. Subsection H of the disclosure statement provided in part that the Debtors and the Committee specifically reserved all rights to bring avoidance actions against Insiders and Bank Parties. Although the Plan contained no "Subsection H", it did contain paragraph 5.2, which is identical to "Subsection H". The Trustee is not collaterally estopped from bringing this avoidance action under the Plan because the Plan expressly provides for it both in its exception to the finality of Western Springs' Allowed Secured Claim and with respect to reservations of rights by the Debtors and the Committee.

9

The Sale Order in paragraph K provided that "upon the closing, the sale and transfer of the Assets to Buyer shall...vest in the Buyer all right, title and interest in the Assets...free and clear of any Encumbrances...".  Paragraph H of the Sale Order broadly defines "Encumbrance" as "claims" as defined in the bankruptcy code as well as "equities, reservations, third party rights, voting trusts or similar arrangements, liens, charges, or other encumbrances or restrictions on or conditions to transfer or assignment of any kind...whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated, of by or against the Debtors or the Assets".  This definition, as broad as it may be, nonetheless applies only to a broad range of claims or encumbrances *against the Debtors or the Assets*, not against a bank party.  No where does the definition of "encumbrance" mention an cause of action which seeks recovery from a creditor to avoid a fraudulent transfer of the Debtors' property.  The sale occurred post confirmation, and, Western Springs was well aware of the terms of Plan and the Trust Agreement that carved out the Debtors' and the Committee's right to pursue this avoidance action.  Had the parties intended for the sale to nullify those Plan and Trust Agreement provisions, they could have easily included in the Sale Order the phrase "any avoidance action against an Insider or Bank Parties" within the definition of "Encumbrance".  They did not do so.

This avoidance action has nothing to do with the validity and priority of Heartland's security interest in the Debtors' assets and any arguments with respect to mootness and finality of the sale likewise fail. The Trustee here filed his initial avoidance action against Western Springs on August 26, 2010.  It was not until late

2010 that the Debtors' moved to sell their assets , with the Sale Order being entered in late February, 2011.  Thus, when Western Springs offered its credit bid for the Debtors' assets, it was already on notice that the Trustee had brought an action to avoid Western Springs' security interest in them.  Nothing in the Sale order nullified the Trustee's right to bring such action.  Accordingly, the Court DENIES Heartland's motion to dismiss Count I.  This matter will be set for further proceedings in due course with notice to the parties.

# # #

Distribution:

Bret Clement, Attorney for the Plaintiff
Jennifer Watt/ Harley Means, Attorneys for Defendant Heartland Bank & Trust Co.
Case Trustee